Kevin H. Marino
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
SERGEY ALEYNIKOV,                                             :      **Civil Action No. 2:15-cv-1170 (KM/MAH)**
                                                              :
                          Plaintiff,                          :
            v.                                                :      ECF Case
                                                              :
MICHAEL McSWAIN, EUGENE CASEY, and                            :
JOHN DOES 1-10, all agents of the Federal                     :
Bureau of Investigation,                                      :      **AMENDED COMPLAINT AND**
                                                              :      **DEMAND FOR TRIAL BY JURY**
                          Defendants.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, Sergey Aleynikov ("Aleynikov"), through his undersigned attorneys, by way of Complaint against Defendants, Michael McSwain ("Agent McSwain") and Eugene Casey ("Agent Casey"), Special Agents of the Federal Bureau of Investigation (the "FBI"), and John Does 1 through 10, fictitiously named agents and employees of the FBI (the "John Doe Defendants"), all of whom are sued in their individual and personal capacities, alleges as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.    This is an action pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), for compensatory and punitive damages to redress violations of Aleynikov's constitutional rights by agents of the FBI, who acted individually and in their personal capacities, at all times under color of federal law, and in concert with one another and with agents of The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. (together, "Goldman Sachs"), to initiate and

pursue two malicious prosecutions against Aleynikov, one in the United States District Court for the Southern District of New York (the "Federal Prosecution") and another in the Supreme Court of the State of New York (the "State Prosecution"), for conduct that, while offensive to Goldman Sachs, clearly did not violate any of the five criminal laws under which Plaintiff was prosecuted.

***Agents McSwain and Casey Initiated The Federal Prosecution Against Aleynikov***

2.      Agents McSwain and Casey, acting at the behest and with the encouragement of Goldman Sachs, maliciously initiated the Federal Prosecution against Aleynikov when they arrested him on July 3, 2009 (the "Federal Arrest"), for allegedly violating the National Stolen Property Act (the "NSPA"), 18 U.S.C. § 2314, by making a digital copy of lines of computer source code to Goldman Sachs's high frequency trading ("HFT") platform during his last week of work at the company.  Agent McSwain was the "case agent" assigned to the Aleynikov case, meaning he was the FBI agent with primary responsibility for the case.  Agent Casey, who made that assignment, supervised Agent McSwain in the Aleynikov case and actively assisted him in effectuating the Federal Arrest.

3.      Based on false information supplied by Goldman Sachs to Agent McSwain with respect to Aleynikov's source code copying, federal prosecutors procured his indictment in the Federal Prosecution for violating the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Economic Espionage Act of 1996 (the "EEA"), 18 U.S.C. § 1832, in addition to the NSPA.

***Aleynikov Prevailed On All Charges In The Federal Prosecution***

4.      Aleynikov prevailed on all charges brought against him in the Federal Prosecution.

5.      The Honorable Denise M. Cote, U.S.D.J., dismissed the CFAA charge against Aleynikov prior to trial in the Federal Prosecution, finding that his conduct as alleged in the indictment did not violate the CFAA.

6.      Although a federal jury convicted Aleynikov of violating the NSPA and the EEA in the Federal Prosecution, the United States Court of Appeals for the Second Circuit dismissed those charges

against Aleynikov and entered a Judgment of Acquittal in his favor on the very day his appeal was argued—after he had spent a year in federal prison while that appeal was pending—for failure to state a crime under either of those statutes.

### *Agents McSwain and Casey Initiated The Federal Prosecution Without Probable Cause*

7.      Agents McSwain and Casey initiated the Federal Prosecution by effectuating the Federal Arrest without probable cause to believe Plaintiff had violated any of the federal statutes with which he was charged.

8.      Agents McSwain and Casey arrested Aleynikov solely for violating the NSPA, although it was clearly established at the time of that arrest, based on the facts known to them, that Aleynikov's conduct did not violate, and could not have violated, that statute.

9.      As the Honorable Ronald A. Zweibel, J.S.C., correctly held in expressly rejecting a claim by the New York County District Attorney's Office (the "DANY") that Aleynikov's arrest for violating the NSPA was based on a reasonable mistake of law, "the most cursory research" would have revealed that the conduct of which he was accused did <u>not</u> violate that statute.

10.     That intangible property does not constitute goods, wares or merchandise within the meaning of the NSPA had been clear for <u>decades</u> by the time Agents McSwain and Casey unlawfully initiated Plaintiff's prosecution for violating that statute by effectuating the Federal Arrest.

11.     Agents McSwain and Casey acted maliciously, not reasonably, in initiating Plaintiff's Federal Prosecution despite decisions of the Supreme Court of the United States and the Second Circuit Court of Appeals holding that the NSPA does not apply to intangible property such as computer source code.

12.     After Agents McSwain and Casey initiated the Federal Prosecution by effectuating the Federal Arrest, Agent McSwain, acting at Goldman Sachs's behest and with its encouragement, pursued that prosecution by making knowingly false statements to representatives of the United States Attorney's

Office for the Southern District of New York, a United States Magistrate Judge, and a federal grand jury, including but not limited to the following:

    a.   that Plaintiff had copied the entire computer platform with which Goldman Sachs conducts its HFT business;

    b.   that the computer source code Plaintiff copied was worth "a billion dollars;"

    c.   that by copying that computer source code, Plaintiff had procured the ability to "manipulate the financial markets in unfair ways;"

    d.   that Plaintiff had accessed Goldman Sachs's computer system "without authorization" to do so or by "exceeding [his] authorized access" to that system, in violation of the CFAA;

    e.   that Plaintiff had transported in interstate commerce stolen "goods, wares, or merchandise," in violation of the NSPA;

    f.   that Plaintiff had stolen a trade secret included in or related to a "product produced for or placed in interstate or foreign commerce," in violation of the EEA.

***Agents McSwain and Casey Initiated The Federal Prosecution With Malice***

    13.    In initiating the Federal Prosecution, Agents McSwain and Casey acted maliciously and for a purpose other than bringing Plaintiff to justice, to wit, for the wholly improper purpose of pursuing the civil interests of Goldman Sachs, a powerful private litigant with direct access to and influence over the FBI and other federal and state government decision makers.

***Agents McSwain and Casey Deprived Aleynikov Of Specific Rights Protected By The United States Constitution***

    14.    Agents McSwain and Casey deprived Aleynikov of specific constitutional rights protected by the United States Constitution by maliciously initiating and pursuing the Federal Prosecution.

15.    As a direct and proximate result of Agents McSwain and Casey's initiation of the Federal Prosecution without probable cause and with malice, Aleynikov suffered multiple deprivations of his liberty and property consistent with the concept of seizure in violation of the Fourth Amendment from the time of his arrest on July 3, 2009, until the commencement of his trial in the Federal Prosecution on November 30, 2010, including:

a.  his pre-conviction incarceration from the time of his arrest without probable cause on July 3, 2009, until July 6, 2009, when he was able to satisfy the conditions of release set by the court;

b.  the requirement that he post a substantial appearance bond;

c.  the requirement that he surrender his travel documents, including his Russian and United States passports;

d.  the significant restriction of his ability to travel;

e.  the requirement that he report regularly to United States Pretrial Services;

f.  the monitoring of his computer activity;

g.  the requirement that he appear in court as directed;

h.  the unlawful seizure, search, and retention of his personal property;

16.    Agents McSwain and Casey also deprived Aleynikov of his right to procedural due process guaranteed by the Fifth Amendment by initiating and pursuing the failed Federal Prosecution without probable cause based on information and allegations they knew to be false, as set forth above.

***Agent McSwain Violated Aleynikov's Right To Due Process By Conspiring To Retain And Transfer His Property To The DANY.***

17.    After Aleynikov prevailed in the Federal Prosecution in 2012, Agent McSwain encouraged one or more FBI agents and prosecutors at the United States Attorney's Office to unlawfully retain and

transfer property seized from Plaintiff in 2009 to the DANY for use in manufacturing false state-law criminal charges against Aleynikov.

18.    The unlawful seizure and retention of Aleynikov's property instigated by Agent McSwain following Aleynikov's acquittal on February 16, 2012, but prior to his indictment in the State Prosecution in September 2012, violated his right to be free from unreasonable searches and seizures under the Fourth Amendment and his right to procedural due process under the Fifth and Fourteenth Amendments.

### *Agent McSwain Initiated The State Prosecution Against Aleynikov*

19.    Following Plaintiff's exoneration in the Federal Prosecution, including his pre-trial acquittal of the CFAA charge by Judge Cote and his post-conviction acquittal of the NSPA and EEA charges by the Second Circuit—which expressly held, *inter alia*, that computer source code is not tangible property—Agent McSwain, acting in concert with Goldman Sachs (and using Aleynikov's property, which was illegally retained and transferred to the DANY following his acquittal by the Second Circuit), conspired to bring fresh charges against Aleynikov based on the identical conduct underlying the failed Federal Prosecution, this time for alleged violation of New York laws.

20.    Agent McSwain initiated and pursued the State Prosecution by falsely swearing, in an application to a New York Supreme Court Justice for issuance of a Felony Arrest Warrant, that in copying Goldman Sachs's HFT computer source code, Plaintiff intended to "appropriate" the use of that source code (i.e., to acquire the major portion of its economic value or benefit) and, having no right to do so and no reasonable ground to believe he had such a right, made a "tangible reproduction or representation" of that source code, in violation of New York's Unlawful Use of Secret Scientific Material ("Unlawful Use") statute, CPL § 165.07; and that Plaintiff copied Goldman Sachs's computer source code despite having no right to do so and no reasonable grounds to believe he had such a right, and thus "appropriated" (i.e., acquired the major portion of the economic value or benefit of) computer related material having a value

in excess of $2,500, in violation of New York's Unlawful Duplication of Computer Related Material ("Unlawful Duplication") statute, CPL § 156.30.

**_Aleynikov Prevailed On All Charges In The State Prosecution_**

21.     A New York state jury acquitted Plaintiff of the Unlawful Duplication charge following trial in New York County Supreme Court and the Honorable Daniel P. Conviser, J.S.C., dismissed the two Unlawful Use charges in the State Prosecution (after the jury failed to reach a verdict on one of those counts and improperly convicted Plaintiff on the other), finding that, as a matter of law, Aleynikov's source code copying did not violate the Unlawful Use statute.

**_Agent McSwain Initiated The State Prosecution Without Probable Cause_**

22.     Agent McSwain initiated the State Prosecution by falsely swearing in a New York State arrest warrant that Plaintiff had made a "tangible reproduction or representation" of Goldman Sachs's secret scientific material.

23.     Agent McSwain so swore although he well knew, from the Second Circuit's clear reiteration of well-settled law just months before—when it reversed Plaintiff's conviction and directed that he be acquitted and released immediately—that Aleynikov's computer-to-computer transfers of source code involved purely *intangible* material and were not "tangible" reproductions or representations.

**_Agent McSwain Initiated The State Prosecution With Malice_**

24.     In initiating the State Prosecution, Agent McSwain acted maliciously and for a purpose other than bringing Plaintiff to justice, to wit, for the wholly improper purpose of pursuing the civil interests of Goldman Sachs, a powerful private litigant with direct access to and influence over the FBI and other federal and state government decision makers—including Manhattan District Attorney Cyrus Vance, Jr.,—and in an effort to escape the consequences of the failed Federal Prosecution.

25.     Agent McSwain also falsely represented to the court that Aleynikov was a fugitive from justice who would likely flee if he became aware that he was about to be re-arrested, although Agent

McSwain well knew that was not the case.  Agent McSwain made this misrepresentation with malice, not for a legitimate law enforcement purpose but rather for the wholly improper purpose of procuring a warrant for Aleynikov's arrest without probable cause and ensuring that he would be re-arrested and re-incarcerated before learning of the false charges contained in the arrest warrant.

***Agent McSwain Deprived Aleynikov Of Specific Rights Protected By The United States Constitution***

26.    As a direct and proximate result of Agent McSwain's conduct in initiating and pursuing the State Prosecution, Aleynikov suffered multiple deprivations of his liberty and property consistent with the concept of seizure in violation of the Fourth Amendment from the time of his arrest on August 2, 2012, until the commencement of his trial in the State Prosecution on April 6, 2015, including:

    a.  his pre-extradition incarceration between August 2 and August 9, 2012;

    b.  the requirement that he post a substantial appearance bond;

    c.  the requirement that he surrender his travel documents, including his Russian and United States passports;

    d.  the  significant restriction of his ability to travel; and

    e.  the requirement that he appear in court as directed.

27.    Aleynikov suffered a deprivation of his right to procedural due process guaranteed by the Fifth and Fourteenth Amendments because Agent McSwain initiated and pursued the failed State Prosecution based on information and allegations he knew to be false.

28.     The compensatory and punitive damages Plaintiff seeks in this action flow directly from the Fourth Amendment unreasonable search and seizure violations Agents McSwain and Casey committed in initiating and pursuing the Federal Prosecution and the Fifth and Fourteenth Amendment procedural due process violations Agent McSwain committed in initiating and pursuing the failed State Prosecution.

*The Suppression Decision And The Trial Order Of Dismissal*

29.    Much of the factual and legal background of this action—including judicial rulings that highlight the blatant constitutional violations complained of in this Bivens action—is set forth in Justice Zweibel's Decision and Order of June 20, 2014 (the "Suppression Decision"), and a Decision and Order issued on July 6, 2015 by the Honorable Daniel P. Conviser, J.S.C., (the "Trial Order of Dismissal") in People v. Aleynikov, 4447/12, the State Prosecution of Aleynikov brought by the DANY.

30.    In the Suppression Decision, which the People did not appeal, Justice Zweibel granted Aleynikov's motion to suppress all of the physical evidence against him based on three findings Justice Zweibel made as a matter of law.  In the Trial Order of Dismissal, as to which the People have filed a Notice of Appeal, Justice Conviser dismissed the Unlawful Use charges against Aleynikov because the conduct on which those charges was based does not, as a matter of law, violate that statute.  True and exact copies of the Suppression Decision and the Trial Order of Dismissal are annexed to this Complaint as Exhibits 1 and 2, respectively.

31.    The three central findings in Justice Zweibel's Suppression Decision are as follows:

     a.    Agent McSwain violated Aleynikov's Fourth Amendment right to be free from unreasonable searches and seizures by effectuating the Federal Arrest without probable cause to believe he had violated the NSPA by allegedly stealing computer source code for Goldman Sachs's HFT platform, and by seizing personal property from him at the time of his Federal Arrest.  That clear violation of Aleynikov's clearly established constitutional rights led to the warrantless search and seizure of his person and his property on July 3, 2009; his immediate detention in federal custody from July 3 until July 6, 2009; the imposition of the other restrictions on his liberty detailed in this Complaint from July 3, 2009 forward; his unlawful indictment and conviction in federal court in the Federal Prosecution and his

imprisonment on that conviction until his appeal was argued on February 16, 2012. That evening, the United States Court of Appeals for the Second Circuit ordered Aleynikov acquitted and released immediately, *see* <u>United States v. Aleynikov</u>, 676 F.3d 71 (2d Cir. 2012), because the conduct charged in the Indictment did not constitute a violation of either the NSPA, for which Aleynikov was arrested, or the EEA, under which he was also convicted.

b.   There was no probable cause to support the EEA charge—which the Government only chose to bring after arresting Aleynikov for violating the NSPA—because, as the Second Circuit also held, the alleged theft of Goldman Sachs's computer source code did not violate the EEA either.

c.   The Government violated Aleynikov's Fourth Amendment right to be free from unreasonable searches and seizures by retaining and transferring his property to the DANY after his acquittal, where it was then used to justify his re-arrest on August 2, 2012 (the "State Arrest") on the state charges of which he was subsequently completely exonerated in the State Prosecution.

32.   The constitutional violations found by Justice Zweibel began shortly after Goldman Sachs reported Aleynikov's alleged theft of its intellectual property. Specifically, those violations began when Agents McSwain and Casey effectuated Aleynikov's Federal Arrest for an alleged violation of the NSPA on July 3, 2009, in response to accusations made just two days earlier, on July 1, 2009, by employees of Goldman Sachs.

33.   Agent McSwain falsely attested to members of the United States Attorney's Office for the Southern District of New York (and later to a United States Magistrate Judge and a federal grand jury), in a successful attempt to improperly influence the decision to indict Plaintiff and continue his malicious

Federal Prosecution, that: (a) Aleynikov had stolen "the entire platform" of confidential, trade secret computer source code Goldman Sachs used to conduct HFT; (b) the allegedly stolen source code was worth "a billion dollars;" (c) Goldman Sachs could suffer immediate and irreparable harm as a result of the alleged theft; and (d) there was a danger that the allegedly stolen source code could be used to "manipulate markets in unfair ways"—a claim that should have raised concerns about Goldman Sachs's own use of that code—unless Aleynikov was arrested and detained immediately.

34. Agent McSwain and those who assisted him accepted Goldman Sachs's allegations as true without hesitation, without conducting a meaningful investigation, without securing or attempting to secure a warrant for Aleynikov's arrest, and—as Justice Zweibel would later determine as a matter of law—without probable cause to believe he had violated any federal law.

35. The following day, July 4, 2009, while Aleynikov was under arrest and in federal custody, Agent McSwain—acting knowingly, recklessly and/or with gross negligence, and with the improper purpose of serving the interests of Goldman Sachs rather than the interests of justice—swore out a criminal complaint charging Aleynikov with violating both the NSPA and the EEA, thus pursuing the Federal Prosecution that Agents McSwain and Casey had initiated without probable cause and with actual malice.

36. Plaintiff was thus seized and detained from July 3, 2009 until July 6, 2009, the date on which he was able to post bond and secure his release, and had his liberty restricted in the manner detailed above from the date of his arrest to the commencement of his federal trial, thus suffering the violation of his right to be free from unreasonable searches and seizures, in violation of the Fourth Amendment; and, throughout the course of his Federal Prosecution, from July 3, 2009, the date of the Federal Arrest, until February 16, 2012, the date of his acquittal in the Second Circuit, was deprived of his liberty and property without due process of law, in violation of his procedural due process rights under the Fifth Amendment.

37.    The reprehensible and relentless campaign to violate Aleynikov's constitutional rights through the Federal Prosecution—which began in response to Goldman Sachs's false representations regarding his conduct and continued unabated before, during, and after his ensuing federal trial, conviction, sentencing, and incarceration for a total of 51 weeks while his appeal was pending—not only persisted but escalated following the Second Circuit's unanimous decision acquitting him of all crimes and ordering him released from prison immediately on the day his appeal was argued.

38.    As Justice Zweibel has determined as a matter of law, after the Second Circuit vacated Aleynikov's conviction, Agent McSwain and others (a) improperly retained property owned by and seized from Aleynikov in conjunction with his Federal Arrest despite his post-acquittal request for the return of that property; and (b) improperly transferred his property to the DANY, where Agent McSwain swore out a warrant for Aleynikov's State Arrest as a fugitive from justice although, as Agent McSwain well knew, Aleynikov was a free man who had no way of knowing fresh charges were being pursued against him.

39.    At the same time, Agent McSwain—again acting with Goldman Sachs's encouragement and at its urging—led Aleynikov to believe that the Government intended to honor his request for the return of (a) his Russian and United States passports—which were at that point unlawfully in the Government's possession—so that he could travel to Russia to visit his mother, who was receiving cancer treatments, although Agent McSwain had no intention of allowing him to make that journey; and (b) the digital equipment seized from his person and his home at the time of his unconstitutional Federal Arrest without probable cause.

40.    The individual and collective mistreatment of Aleynikov in the teeth of the Second Circuit's order acquitting him of all charges resulted in his re-detention for one week following the State Arrest, from August 2 to 9, 2012, before he was extradited to New York and arraigned on the new charges against him.  That brought to exactly one full year and three days the time Aleynikov has spent in custody

12

at Goldman Sachs's behest—all because Agent McSwain twice chose to credit and promote the false allegations of that powerful multi-national corporation rather than honoring his sworn duty as a federal law enforcement officer to familiarize himself with well-settled law and diligently investigate the facts before instituting criminal charges against a United States citizen.

41.    It has now been established as a matter of law that the unlawful retention and transfer of Aleynikov's property was a violation of his Fourth Amendment rights.

42.    The unconstitutional, malicious, successive prosecutions of Aleynikov were designed not to serve the interests of justice but to curry favor with an influential corporation intent on punishing one of its most talented officers who chose to leave the firm and, in the process, sending a message to other employees and prospective employees that Goldman Sachs is willing and able to use the American criminal justice system as its own private enforcement arm.  The unlawful retention and transfer of Aleynikov's property to the DANY was designed, equally improperly, to escape the consequences of the failed Federal Prosecution of Aleynikov by manufacturing a meritless State Prosecution—which would also ultimately fail—for the same conduct.

43.    It didn't work.  Although Agent McSwain and his confederates in the federal government and at Goldman Sachs were successful in conscripting District Attorney Vance and other officials of the DANY into their unconstitutional campaign to re-prosecute Plaintiff—this time for state crimes he did not commit—Plaintiff declined the DANY's offer to plead guilty to Unlawful Duplication and Unlawful Use in exchange for a promise of a non-custodial sentence, and instead proceeded to trial.

44.    On May 1, 2015, Plaintiff was acquitted of Unlawful Duplication and the jury was unable to reach a verdict on one Unlawful Use count and convicted him of the other.  Thereafter, on July 6, 2015, Justice Conviser entered the Trial Order of Dismissal on both Unlawful Use counts, finding that no rational

jury could have convicted Plaintiff on either count because the conduct alleged in those counts did not constitute the crime of Unlawful Use.

45.    On July 24, 2015, the DANY filed a Notice of Appeal of Justice Conviser's ruling despite its ineluctable logic, thus demonstrating the continuing damning effect of Defendants' blatant violation of Plaintiff's constitutional rights (and, in the process, confirming Mr. Vance's willingness to waste yet more of his office's limited law enforcement resources to earn the approval of his confreres at Goldman Sachs by refusing to concede that his pursuit of Aleynikov, like that of his federal counterparts, has been a complete and abysmal failure).   In this Bivens action, Plaintiff seeks recompense, in the form of compensatory and punitive damages and attorneys' fees, for those constitutional violations and the subversion of the rule of law they represent.

### *Aleynikov Asserted His Claims In This Action In A Timely Manner*

46.    Defendants' conduct as alleged in this Complaint all occurred within the three-year limitations period applicable to this Bivens action, which seeks to recover compensatory and punitive damages for malicious prosecutions that were conducted and deprivations of property and liberty that occurred in the State of New York, in violation of the Fourth Amendment's guarantee against unreasonable searches and seizures and the Fifth and Fourteenth Amendments' guarantees against deprivations of liberty without procedural due process of law.

47.    Plaintiff's malicious prosecution claims as detailed in this Complaint are not predicated solely on his post-conviction incarceration in the Federal Prosecution, although his incarceration in federal prison for 51 weeks on an unlawful conviction is surely a violation of his clearly established Fifth Amendment right to procedural due process as alleged in this Bivens action.

48.    All of the unconstitutional incursions on Plaintiff's liberty and property detailed in this Complaint, which occurred throughout the protracted Government/Goldman Sachs campaign to search and seize Plaintiff and his personal property, to twice prosecute him without probable cause, and to

intentionally deprive him of his liberty and property without due process of law, also form the predicate for his malicious prosecution claims.

*__Defendants Are Not Entitled To Qualified Immunity__*

49.      Defendants' conduct as alleged in this Complaint entailed the intentional, malicious, repeated, and clear violation of Aleynikov's clearly established constitutional rights, for which they are not entitled to qualified immunity.

50.      The fact that Agent McSwain's false swearing successfully persuaded judges and grand juries in the Federal Prosecution and the State Prosecution that there was probable cause to prosecute Plaintiff when there was none does not make those misstatements of the law reasonable.  To the contrary, even the most cursory research would have revealed that the source code copying for which Plaintiff was twice maliciously prosecuted did not violate any of the three federal and two state criminal statutes for which two separate failed criminal proceedings were initiated against him.  As was ultimately and conclusively determined in the Federal and State Prosecutions, (a) Plaintiff's computer source code copying was not unauthorized and did not constitute exceeding authorized access; (b) the computer source code Plaintiff copied was not tangible property; (c) the computer source code Plaintiff copied was not a trade secret included in or related to a product produced for or placed in interstate or foreign commerce; (d) Plaintiff did not copy computer source code without having the right to do so or reasonable grounds to believe he had such a right, and did not thereby acquire the major portion of its economic value or benefit; (e) Plaintiff did not intend to appropriate the use of Goldman Sachs's computer source code (i.e., to acquire the major portion of its economic value or benefit); and (f) Plaintiff did not, having no right to do so and no reasonable ground to believe he had such a right, make a tangible reproduction or representation of that computer source code.  That Agent McSwain's false swearing that there was probable cause to believe Plaintiff violated five different criminal statutes was initially credited by federal and state judges and grand juries only to be roundly rejected in the fullness of time does not convert those

ultimately and thoroughly discredited claims into "reasonable mistakes" immunizing Defendants from liability.  This Complaint follows.

## THE PARTIES

51.     Aleynikov is a resident of the State of New Jersey, County of Passaic and City of Clifton. Until June 5, 2009, he was a Vice President in the Equities Division of Goldman Sachs.

52.     At all times relevant hereto, Agent McSwain was an FBI Agent who was intimately involved in the initiation and continuation of both the Federal Prosecution and the State Prosecution of Aleynikov and the unlawful retention and transfer of his property described in this Complaint.  He is sued in his individual and personal capacity for his intentional violation of Aleynikov's clearly established rights as alleged in this Complaint.

53.     At all times relevant hereto, Agent Casey was an FBI Agent assigned to the FBI's New York Office who approved, supervised, and personally participated in Aleynikov's Federal Arrest without probable cause.  Agent Casey is sued in his individual and personal capacity for his intentional violation of Aleynikov's clearly established rights.

54.     John Does 1 through 10 are fictitiously-named agents or employees of the FBI who participated, by their own individual acts and in concert with one another and the other Defendants, in the violation of Aleynikov's clearly established constitutional rights under color of federal law as alleged in this Complaint.  They are sued in their individual and personal capacities for those constitutional violations.

## JURISDICTION AND VENUE

55.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Supreme Court's decision in Bivens because it alleges violations of Aleynikov's constitutional rights by Defendants, all agents of the FBI acting individually and in concert and at all times under color of federal law, and all of whom are sued in their individual and personal capacities.

56.     Federal law looks to the law of the state in which the cause of action arose to determine the applicable statute of limitations.  New York is undeniably the state in which Plaintiff's cause of action arose because (a) the two malicious prosecutions at the heart of this action; (b) the allegedly criminal source code copying underlying those malicious prosecutions; (c) Agent McSwain's false swearing to initiate the Federal Prosecution; (d) Aleynikov's successful defense in the Federal Prosecution; (e) the unlawful retention and transfer of Plaintiff's property to the DANY following his acquittal in the Federal Prosecution; (f) Agent McSwain's false swearing to initiate the State Prosecution; and (g) Aleynikov's successful defense in the State Prosecution, all occurred in New York.

57.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this case—in particular, Aleynikov's Federal Arrest; the seizure of his personal property at the time of that arrest; his State Arrest; and his pre-extradition detention on state charges— occurred in this judicial district, of which Aleynikov is, and at all times relevant to this Complaint has been, a resident.

## FACTUAL ALLEGATIONS

### Goldman Sachs Provokes The Federal Prosecution Without Probable Cause.

58.     Aleynikov was a highly skilled and respected computer programmer who worked in the New York office of Goldman Sachs's Equities Division from May 2007 through June 2009.

59.     On April 21, 2009, Aleynikov signed an offer letter to work at Teza Group LLC ("Teza"), a startup HFT company.  In late April 2009, Aleynikov gave Goldman Sachs notice that he would be leaving the firm to pursue an opportunity at an HFT startup company that would pay him annual compensation in excess of $1 million.  At Goldman Sachs's request, Aleynikov continued working at the firm to complete various Goldman Sachs projects until June 5, 2009, which was his last day in the office.

60.     On June 29, 2009, technology officers at Goldman Sachs discovered what they believed was evidence that, between June 1 and June 5, 2009, Aleynikov had copied a relatively small portion of

17

the computer data contained in Goldman Sachs's HFT platform.  At the time of that discovery, Goldman Sachs did not know the function or value of the allegedly copied data and had no basis for alleging that it was worth "a billion dollars" or that its copying—which Goldman Sachs knew had occurred nearly a month earlier—posed an imminent threat to Goldman Sachs, its HFT platform, or the world's financial markets.  Goldman Sachs nonetheless used the enormous influence it enjoys over federal law enforcement officers—and, in particular, Agent McSwain—to immediately instigate Aleynikov's unlawful prosecution on federal criminal charges to achieve its own commercial goals.

61.    Specifically, on July 1, 2009, representatives of Goldman Sachs contacted the FBI and urged it to arrest Aleynikov immediately.  To instigate Aleynikov's malicious prosecution, Goldman Sachs made numerous false representations to the FBI, and to Agent McSwain in particular, including that Aleynikov had stolen its entire HFT infrastructure.

62.    In further support of its request that Aleynikov be arrested immediately, Goldman Sachs's representatives falsely told Agent McSwain that (i) "the cornerstone of Goldman's electronic trading platform for equity products was uploaded to a server in London, England by Aleynikov;" (ii) "[t]he files that were uploaded . . . were owned wholly by Goldman and were obtained through in-house software developers and acquisitions of other companies;" and (iii) "it would take 40 software programmers more than 10 years to build the programs that were taken from Goldman."

63.    A Goldman Sachs representative also falsely reported to Agent McSwain that Goldman Sachs "profits more than $100,000,000 a year directly related to the programs taken" by Aleynikov and that although the representative could not put an exact dollar figure on the value of the software allegedly taken by Aleynikov, Goldman Sachs "would not license the software for anything less than $1 billion."

18

64.     Another Goldman Sachs representative shared with Agent McSwain her erroneous belief that "the high salary that Aleynikov demanded [from his new employer] was because he was bringing Goldman's software with him."

65.     That same day, July 1, 2009, Agent McSwain requested authorization to initiate a full investigation of Aleynikov, who was subsequently dubbed "McSwain's Goldman guy" by Agent Casey. Agent Casey granted that authorization the same day.

66.     The following day, July 2, 2009, Agent McSwain performed a search of airline reporting and reported to Goldman Sachs that Aleynikov had traveled to Chicago and was expected to return the following evening, July 3, 2009.

67.     On July 2 and July 3, 2009, Goldman Sachs representatives continued to supply Agent McSwain with misinformation regarding Aleynikov's alleged theft.  In providing that misinformation, Goldman Sachs intended that the FBI would rely upon it in instituting a malicious prosecution of Aleynikov.

68.     It worked.  Agents McSwain and Casey substituted blind reliance on Goldman Sachs, an interested party, for any meaningful investigation of the facts; ignored long-settled law—including a 1966 Second Circuit decision and a 1985 decision of the Supreme Court of the United States—holding that the NSPA does not apply to intangible property such as computer source code; and forewent the critical step of presenting the law and facts as they understood them to a neutral and detached magistrate.  In so doing— as Justice Zweibel concluded based on his assessment of the evidence, including the testimony adduced at a suppression hearing over which he presided in May 2013 (the "Suppression Hearing")—they arrested Aleynikov without probable cause, in violation of his Fourth Amendment rights.

69.     That seminal step, which was itself a violation of Aleynikov's Fourth Amendment rights, led directly to Agent McSwain's subsequent ill-advised attempt to escape the consequences of his

misconduct through the unconstitutional retention and transfer of Aleynikov's property to the DANY following his acquittal by the Second Circuit for use in a state prosecution of the identical alleged theft, and to Agent McSwain's integral role in initiating and pursuing that second malicious State Prosecution, which also entailed violations of Plaintiff's constitutional rights as alleged in this Complaint.

***Agents McSwain and Casey Initiate The Malicious Federal Prosecution of Aleynikov.***

70.    On July 4, 2009, while Aleynikov was under arrest and in federal custody, Agent McSwain signed a criminal complaint charging him with one count of violating the NSPA and one count of violating the EEA.   As alleged above, Agent McSwain leveled those charges in almost complete reliance on Goldman Sachs and in the interest of accomplishing its objectives, without performing any meaningful independent investigation of those alleged crimes or making any effort to determine whether the NSPA and the EEA even applied to the conduct of which Goldman Sachs had accused Aleynikov.

71.    At the Suppression Hearing, Agent McSwain admitted—and Justice Zweibel found—that at the time he signed the criminal complaint in the Federal Prosecution, he erroneously believed that the NSPA applied to intangible property such as computer source code despite long-settled case law to the contrary in both the Second Circuit Court of Appeals and the Supreme Court of the United States, and that he had not even read the EEA or familiarized himself with its meaning before charging Plaintiff with violating those statutes.

72.    At the Suppression Hearing, Agent McSwain further testified (and Justice Zweibel found) that he knew Aleynikov was alleged to have stolen intangible property but nonetheless charged him with violating the NSPA, which does not apply to such property, and that he did nothing "whatsoever" to satisfy himself that Aleynikov had taken from Goldman Sachs "a trade secret related to or included in a product produced for or placed in interstate or foreign commerce," as required to state a crime under the EEA.

73.    By those admissions, Agent McSwain acknowledged that he disregarded his sworn duty to familiarize himself with the laws he is entrusted with enforcing and to faithfully investigate alleged

violations of those laws, and instead relied entirely on Goldman Sachs's representations to support his sworn allegation that Aleynikov had committed federal crimes against Goldman Sachs.  Following the Federal Arrest, as Justice Zweibel found, Aleynikov was indicted in the United States District Court for the Southern District of New York for violations of the NSPA and the EEA as well as the CFAA, all based on his alleged theft of computer source code for Goldman Sachs's HFT system.

74.     Agent McSwain was integrally involved in all stages of the investigation and Federal Prosecution of Aleynikov, taking steps that included (i) interviewing and re-interviewing representatives of Goldman Sachs; (ii) parroting representations made to him by Goldman Sachs representatives before a federal grand jury on February 11, 2010, without meaningfully investigating or testing the veracity of those representations and for the wholly improper purpose of achieving Goldman Sachs's goal of procuring an indictment against Aleynikov and sending a message to its present and future employees about its ability to influence federal law enforcement authorities to bring criminal charges to further its private interests; and (iii) attending every day of Aleynikov's federal criminal trial, meeting with and advising prosecutors, and himself testifying at that trial.

75.     In addition to accepting Goldman Sachs's representations about the nature and value of the files allegedly taken by Aleynikov without any investigation much less verification, Agent McSwain acted knowingly and/or recklessly in disregarding information demonstrating the baselessness and falsity of those representations.  On July 4, 2009, for example, Magistrate Judge Fox stated on the record, "Much during the course of this proceeding is based on speculation.  But we don't deal with speculation when we come to court; we deal with facts."   Judge Fox went on to note, "there is no evidence that has been proffered that the material [that] was taken, or alleged to have been taken, from [Goldman Sachs] has been used to harm it or anyone else."

76.     Ten days later, on July 14, 2009, Goldman Sachs CFO David Viniar directly contradicted Agent McSwain's representations concerning the value and nature of the code allegedly taken by Aleynikov, confirming that (i) Goldman Sachs "still has the code.  It's not like the code had been lost to Goldman Sachs.  And even if it had been, it's a small piece of our business;" and (ii) any losses sustained by the firm as a result of the alleged theft would be "very, very immaterial."

77.     Despite Magistrate Judge Fox's skepticism about Goldman Sachs's allegations and David Viniar's statements undercutting those allegations, Agent McSwain pressed forward with the malicious prosecution of Aleynikov for violations of the EEA, the NSPA, and the CFAA based on his alleged theft of trade secret computer source code from Goldman Sachs.

78.     As a direct and proximate result of the malicious Federal Prosecution, Aleynikov suffered the complete depletion of his life savings and all of his assets to mount a legal defense; the termination of his employment with Teza and the cancellation of his employment contract, which was worth more than one million dollars per annum; the sudden derailment of his career; the total devaluation of his advanced degree and proven talent in computer programming; the destruction of his ability to secure alternative employment in his chosen field; the impairment of his ability to support his family and the resulting disintegration of his family unit; and the assassination of his character and destruction of his reputation.

### *Aleynikov's False Conviction, Unlawful Detention, Sentencing, Incarceration, And Acquittal On Appeal And The Illegal Retention And Transfer of His Property.*

79.     Shortly after he was indicted by a federal grand jury, Aleynikov filed a pretrial motion to dismiss the Indictment for failure to state a crime under any of those three federal statutes.  That motion was premised on the precise legal theory that ultimately formed the basis of the Second Circuit's unanimous decision to acquit him of all crimes.  But Judge Cote, who would later preside over Aleynikov's trial, only granted that motion as to the CFAA charge, denying it as to the EEA and the NSPA charges.

Soon thereafter Aleynikov was tried, convicted, and sentenced to 97 months in prison. He would spend 51 weeks in federal custody before his acquittal by the Second Circuit on February 16, 2012.

80.    Plaintiff's Federal Prosecution for violating the NSPA and EEA terminated in his favor when the Second Circuit reversed his conviction on appeal and directed that a Judgment of Acquittal on that charge be entered in his favor. The Second Circuit's ruling was issued on February 16, 2012, the day Aleynikov's appeal was argued; its opinion memorializing that ruling was issued on April 11, 2012. On June 6, 2012, the Second Circuit issued its mandate in the Federal Prosecution, which it made *nunc pro tunc* to April 11, 2012, bringing that failed criminal proceeding to a close. Judge Cote entered a Judgment of Acquittal on that charge, pursuant to the Mandate, on June 5, 2012.

81.    Shortly after Aleynikov's acquittal by the Second Circuit, Agent McSwain assisted the DANY in instituting a second prosecution of Aleynikov for his alleged source code theft, this time on state law charges. To facilitate the New York state grand jury's investigation of Aleynikov after his federal court acquittal, Agent McSwain and one or more FBI agents and prosecutors from the United States Attorney's Office retained and transferred Aleynikov's property to the DANY, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures, and his Fifth and Fourteenth Amendment rights to procedural due process, where that property was used to effectuate his State Arrest and institute the State prosecution.

82.    Specifically, on Friday, June 22, 2012, Plaintiff's counsel telephoned Agent McSwain at his office in Washington, D.C., and requested (a) the return of Plaintiff's United States and Russian passports, explaining that Plaintiff wished to travel to Russia in July 2012 to visit his mother, who was undergoing cancer treatments there; and (b) the return of the property seized from Plaintiff in connection with the Federal Prosecution. Agent McSwain referred Plaintiff's counsel to the United States Attorney's Office for the Southern District of New York. But while purporting to cooperate in Aleynikov's efforts

to secure the return of his property, Agent McSwain immediately put into motion a secret plan to retain that property and institute new charges against Aleynikov before he could regain his freedom to travel.

83.     On Wednesday, June 27, 2012, Plaintiff's counsel telephoned the United States Attorney's Office and spoke with Michael Bosworth, an Assistant United States Attorney, who asked counsel to provide him with a list of Plaintiff's property that counsel wanted returned to him; indicated that Plaintiff's United States passport had been returned to the State Department and may have been destroyed; and stated that Plaintiff was free to apply for a new passport at any time.  AUSA Bosworth also indicated that he would call Dennis Khilkevich, Plaintiff's Pretrial Services officer, to see if he could learn anything more that might be helpful to Plaintiff's counsel.

84.     On Friday, June 29, 2012, AUSA Bosworth emailed Plaintiff's counsel and indicated that he had spoken with Mr. Khilkevich regarding Plaintiff's passports; that Mr. Khilkevich was attempting to locate them; and that neither he nor Mr. Khilkevich had any sense of whether or when the passports might be located.  AUSA Bosworth also reiterated his suggestion that Mr. Aleynikov consider applying for new passports.  On Monday, July 2, 2012, Plaintiff's counsel sent AUSA Bosworth an email detailing the items that were seized from Mr. Aleynikov and the receipt reflecting those items.

85.     Unbeknownst to Plaintiff, after his attorney sent AUSA Bosworth the list of property he wanted returned to him, and while Plaintiff was laboring under the misconception that his property would in fact be returned, Assistant United States Attorney Thomas Brown—having learned from Agent McSwain that Aleynikov was attempting to recover his travel documents and travel to Russia—made an emergent *ex parte* application to Judge Cote to lift the protective order covering that property so that, rather than honor Aleynikov's request for the return of his property, the FBI could provide it to the DANY for use in a state investigation of Aleynikov for copying Goldman Sachs's computer source code without violating the court's existing protective orders.  In making that application, which Judge Cote granted in

24

an Unsealing Order entered on July 12, 2012, AUSA Brown failed to advise the Court that (a) the confidential materials the Government intended to provide to the state included property belonging to Plaintiff; (b) upon the termination of his Federal Prosecution, Plaintiff had expressly and specifically requested that the Government return that property to him; (c) the Government was legally required to honor that request; (d) the Government was in contact with Plaintiff's counsel regarding the return of his property when it made its secret unsealing application; or (e) the state had not secured a search warrant for the property in question.

86.     In keeping with the Government's application, Judge Cote's Unsealing Order removed the impediment the Protective Orders and Sealing Order posed to the Government's ability to transfer to the DANY the material covered by those Orders.  But that was not the only legal impediment to the transfer of those items to the state.  That certain of those items belonged to Plaintiff, were required to be returned to him upon his federal acquittal, and were not the subject of a search warrant, presented an entirely different obstacle to the transfer of that property.

87.     The Unsealing Order did not remove that obstacle.  It did nothing to imbue the Government with the power to simply ignore the law as articulated by the Second Circuit, disregard the Fourth Amendment's ban on unreasonable searches and seizures, and give the DANY Plaintiff's property *on a silver platter* without a search warrant.  Stated simply, Judge Cote did not (nor was she asked to) grant the Government permission to give the DANY Aleynikov's property—being his flash drive and his home computers—without such a warrant.  The federal Government only gained possession of that property by seizing it in connection with the failed Federal Prosecution, which had terminated in Aleynikov's favor by the time the Unsealing Order was sought, and was legally required to return that property to him before AUSA Brown's application was ever made.  The Unsealing Order did not constitute judicial permission

to violate Mr. Aleynikov's property and privacy interests, much less to transgress his constitutional rights, by anyone's lights.

88.    Nevertheless, after procuring Judge Cote's Unsealing Order, Agent McSwain, aided by one or more FBI agents and prosecutors from the United States Attorney's Office, ignored Plaintiff's request for the return of his property and instead turned that property over to the DANY.  As Justice Zweibel would later find, that was a clear violation of Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures.  It was also a clear violation of Plaintiff's clearly established right to be free from deprivations of his property without due process of law, as guaranteed by the procedural due process clause of the Fifth and Fourteenth Amendments.

89.    In ruling that the retention and transfer of Aleynikov's property to the DANY following his acquittal and request for the return of that property violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment, Justice Zweibel expressly found that there was no legal basis to retain Aleynikov's property after he requested its return, and that the transfer of that property to the DANY was improper.

### *Agent McSwain Initiates And Pursues The State Prosecution of Aleynikov, Which Ends In His Acquittal Of All Crimes.*

90.    The violations of Plaintiff's constitutional rights did not end with the unconstitutional seizure and transfer of his property to state custody.  Working in conjunction with representatives of the DANY and Goldman Sachs, Agent McSwain promptly set about initiating a State Prosecution of Plaintiff for the precise conduct—the copying of Goldman Sachs's computer source code in June 2009—that animated his failed Federal Prosecution.

91.    On August 1, 2012, Agent McSwain signed a sworn document—this time a New York State Felony Arrest Warrant—attesting that Aleynikov had "committed the offenses of . . . Unlawful Use of Secret Scientific Material … and Unlawful Duplication of Computer Related Material" by having

"made a tangible reproduction of secret scientific material with the intent to appropriate the use of such material to a person other than an owner thereof and while having no right to do so or reasonable ground to believe that he had such a right; and . . . , while having no right to do so, duplicated computer data and a computer program and thereby intentionally and wrongfully deprived the owner thereof of an economic benefit in excess of 2,500 dollars." Those sworn statements—like Agent McSwain's false swearing that sparked the failed Federal Prosecution three years earlier—were knowingly false when made. There was no more probable cause to believe Plaintiff had violated the Unlawful Duplication or Unlawful Use statutes than there was to believe he had violated the NSPA, the EEA, or the CFAA.

92.    On August 2, 2012, one day after Agent McSwain executed the Felony Arrest Warrant falsely stating that Plaintiff had violated New York's Unlawful Duplication and Unlawful Use statutes, Plaintiff was arrested and taken into custody as a fugitive from justice. He remained in custody from August 2 until August 9, 2012, when he was first given the opportunity to waive extradition and be transported to New York for his initial appearance in the State Prosecution.

93.    Aleynikov's seizure and week-long detention in a state facility without probable cause deprived Plaintiff of his liberty and constituted both an unreasonable seizure within the meaning of the Fourth Amendment and a violation of his procedural due process right under the Fifth and Fourteenth Amendments to the United States Constitution.

94.    On August 9, 2012, Plaintiff had additional restrictions placed on his liberty, including the requirement that he post an appearance bond; surrender his Russian and New York passports to the custody of his counsel, who was required to retain them in escrow; limit his travel to New York and New Jersey without leave of court; and appear at court proceedings as required throughout the course of the State Prosecution. That day, District Attorney Vance issued a press release announcing Plaintiff's arrest in

which he expressly thanked both Agent McSwain and Goldman Sachs for their assistance in initiating the State Prosecution.  A true and exact copy of that press release is annexed to this Complaint as Exhibit 3.

95.    Agent McSwain again presented sworn false testimony in the State Prosecution in September 2012, when he testified before a grand jury in New York County that Plaintiff had violated the Unlawful Duplication and Unlawful Use statutes.  The DANY also presented that grand jury with evidence that Agents McSwain and Casey unlawfully seized from Aleynikov at the time of his Federal Arrest on July 3, 2009, and illegally seized a second time when they transferred that property to the DANY for use in the failed State Prosecution.  Agent McSwain thus initiated and pursued a second prosecution of Plaintiff for crimes he did not commit.

96.    Based in part on testimony Agent McSwain gave on cross examination during the Suppression Hearing in the State Prosecution, Justice Zweibel found that Agents McSwain and Casey violated Aleynikov's Fourth Amendment rights by arresting him without probable cause and by retaining his property and turning it over to the DANY after he requested its return.  Justice Zweibel accordingly suppressed all of the physical evidence against Plaintiff.

97.    After it was pending for nearly three years, the State Prosecution finally came to trial on April 6, 2015.

98.    On April 15, 2015, Agent McSwain testified at that trial as a witness for the prosecution. Although Justice Conviser directed the parties that there was to be no reference made to the Federal Prosecution,  Agent McSwain intentionally tried to prejudice the jury by making such a reference before he was stopped mid-sentence by counsel and the court.

99.    At the conclusion of the trial, the jury acquitted Plaintiff of Unlawful Duplication on May 1, 2015, failed to reach a verdict on one Unlawful Use count, and convicted Aleynikov on the other such count.  On July 6, 2015, Justice Conviser vacated Aleynikov's Unlawful Use conviction and dismissed

the Unlawful Use count on which the jury failed to reach a verdict by entering a Trial Order of Dismissal, accompanied by a 72-page decision. (Exhibit 2.) As a result, Aleynikov has now been completely exonerated of every federal and state criminal charge to be brought against him.

100. On July 24, 2015, the DANY filed a Notice of Appeal of Justice Conviser's dismissal in the State Prosecution. The harm to Plaintiff from the repeated violations of his constitutional rights, which began more than six years ago when Agents McSwain and Casey initiated his Federal Arrest without probable cause on July 3, 2009, thus continues to the date of this Complaint. Agent McSwain's malice in initiating and continuing two failed prosecutions of Aleynikov without probable cause for federal and state crimes he did not commit, and that no rational juror could have found he committed, is amply reflected in the acts he took as alleged in this Complaint, in his individual and personal capacity and under color of federal law. Those acts violated Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights as set forth in this Complaint, entitling Plaintiff to compensatory and punitive damages.

## FIRST COUNT
### MALICIOUS PROSECUTION UNDER THE NSPA IN VIOLATION OF THE FOURTH AMENDMENT GUARANTEE AGAINST UNREASONABLE SEARCHES AND SEIZURES (AGAINST AGENTS MCSWAIN AND CASEY AND JOHN DOES 1-10)

101. Aleynikov repeats and realleges the allegations contained in Paragraphs 1 through 100 of this Complaint as though fully set forth herein.

102. Agents McSwain and Casey, both acting in their personal capacities and by their own individual acts, and at all times under color of federal law, initiated the Federal Prosecution by arresting Plaintiff for violating the NSPA, after which Agent McSwain falsely swore that Plaintiff had done so, as detailed in this Complaint.

103. Agents McSwain and Casey, both acting in their personal capacities and by their own individual acts, and at all times under color of federal law, initiated the Federal Prosecution of Plaintiff for violating the NSPA without probable cause to believe he had done so.

104.    Agents McSwain and Casey, both acting in their personal capacities and by their own individual acts, and at all times under color of federal law, initiated the Federal Prosecution of Plaintiff for violating the NSPA with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

105.    Plaintiff's Federal Prosecution for violating the NSPA was terminated in his favor when the Second Circuit reversed his conviction on appeal and directed that a Judgment of Acquittal on that charge be entered in his favor.

106.    Aleynikov suffered multiple deprivations of his liberty and property consistent with the concept of seizure in violation of the Fourth Amendment from the time of his arrest on July 3, 2009, until the commencement of his trial in the Federal Prosecution on November 30, 2010, as set forth in Paragraph 15 of this Complaint.

107.    The malicious prosecution of Plaintiff by Agents McSwain and Casey under the NSPA as alleged in this Count violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

108.    As a direct and proximate result of the violation of his Fourth Amendment right to be free from unreasonable searches and seizures as alleged in this count, Aleynikov has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain, Agent Eugene Casey, and John Does 1-10, on the First Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

**SECOND COUNT**
**MALICIOUS PROSECUTION UNDER THE EEA IN VIOLATION OF THE FOURTH**
**AMENDMENT GUARANTEE AGAINST UNREASONABLE SEARCHES AND SEIZURES**
**(AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)**

109.    Aleynikov repeats and realleges the allegations contained in Paragraphs 1 through 108 of this Complaint as though fully set forth herein.

110.    After Agents McSwain and Casey initiated the Federal Prosecution by arresting Plaintiff for violating the NSPA, and Agent McSwain falsely swore that Plaintiff had violated that statute and the EEA, Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, pursued the Federal Prosecution of Plaintiff for violating the EEA without probable cause to believe he had done so.

111.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, pursued the Federal Prosecution of Plaintiff for violating the EEA with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

112.    Plaintiff's Federal Prosecution for violating the EEA was terminated in his favor when the Second Circuit reversed his conviction on appeal and directed that a Judgment of Acquittal on that charge be entered in his favor.

113.    Aleynikov suffered multiple deprivations of his liberty and property consistent with the concept of seizure in violation of the Fourth Amendment from the time of his arrest on July 3, 2009, until the commencement of his trial in the Federal Prosecution on November 30, 2010, as set forth in Paragraph 15 of this Complaint.

114.    The malicious prosecution of Plaintiff by Agent McSwain under the EEA as alleged in this Count violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

115.     As a direct and proximate result of the violation of his Fourth Amendment right to be free from unreasonable searches and seizures as alleged in this count, Aleynikov has suffered and will continue to suffer severe and permanent damages.

WHEREFORE, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Second Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### MALICIOUS PROSECUTION UNDER THE NSPA IN VIOLATION OF THE FIFTH AMENDMENT GUARANTEE AGAINST DEPRIVATIONS OF LIBERTY WITHOUT PROCEDURAL DUE PROCESS OF LAW (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)

116.     Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 115 of this Complaint as though fully set forth herein.

117.     Agent McSwain initiated and pursued a malicious prosecution of Plaintiff under the NSPA by providing false information to federal prosecutors, the Court, and the grand jury.

118.     Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the Federal Prosecution of Plaintiff for violating the NSPA without probable cause to believe he had done so.

119.     Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the Federal Prosecution of Plaintiff for violating the NSPA with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

120.     Plaintiff's Federal Prosecution for violating the NSPA was terminated in his favor when the Second Circuit reversed his conviction on appeal and directed that a Judgment of Acquittal on that charge be entered in his favor.

121.    The malicious prosecution of Aleynikov for violating the NSPA as alleged in this count violated his right to procedural due process, in violation of the Fifth Amendment.

122.    As a direct and proximate result of the violation of his Fifth Amendment right to procedural due process as alleged in this count, Plaintiff suffered severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Third Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

### FOURTH COUNT
### MALICIOUS PROSECUTION UNDER THE EEA IN VIOLATION OF THE FIFTH AMENDMENT GUARANTEE AGAINST DEPRIVATIONS OF LIBERTY WITHOUT PROCEDURAL DUE PROCESS OF LAW
### (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)

123.    Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 122 of this Complaint as though fully set forth herein.

124.    Agent McSwain initiated and pursued a malicious prosecution of Plaintiff under the EEA by providing false information to the prosecutors, the Court and the grand jury.

125.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the Federal Prosecution of Plaintiff for violating the EEA without probable cause to believe he had done so.

126.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the Federal Prosecution of Plaintiff for violating the EEA with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

127.    Plaintiff's Federal Prosecution for violating the EEA was terminated in his favor when the Second Circuit reversed his conviction on appeal and directed that a Judgment of Acquittal on that charge be entered in his favor.

128.    The malicious prosecution of Aleynikov for violating the EEA as alleged in this count violated his right to procedural due process, in violation of the Fifth Amendment.

129.    As a direct and proximate result of the violation of his Fifth Amendment right to procedural due process as alleged in this count, Plaintiff suffered severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Fourth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

### FIFTH COUNT
### UNREASONABLE RETENTION AND TRANSFER OF PROPERTY IN VIOLATION OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10 )

130.    Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 129 of this Complaint as though fully set forth herein.

131.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, unlawfully retained and transferred property that was seized from Aleynikov at the time of his Federal Arrest following his acquittal by the Second Circuit and despite his request for the return of that property.

132.    In unlawfully retaining and transferring Aleynikov's property, Agent McSwain violated his Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth and Fourteenth Amendment right to procedural due process.

133.    In retaining and transferring Aleynikov's property following his acquittal in the Federal Prosecution and despite his request for its return, Agent McSwain acted with actual malice, knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

134.    Agent McSwain engaged in the acts alleged in this Count maliciously, with full knowledge and intent that his actions would violate Aleynikov's Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth and Fourteenth Amendment right to procedural due process, in retaliation for and to relieve the Government's embarrassment resulting from the successful appeal of his unlawful conviction, in an attempt to placate Goldman Sachs, and in the hope of escaping the consequences of the malicious Federal Prosecution.

135.    Agent McSwain's unlawful and malicious retention and transfer of Aleynikov's property as alleged in this count violated his right to be free from unreasonable searches and seizures under the Fourth Amendment and his right to procedural due process under the Fifth and Fourteenth Amendments.

136.    As a direct and proximate result of in violation of his Fourth, Fifth, and Fourteenth Amendment rights as alleged in this Complaint, Aleynikov has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Fifth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

## SIXTH COUNT
### MALICIOUS PROSECUTION UNDER THE UNLAWFUL DUPLICATION STATUTE IN VIOLATION OF THE FOURTH AMENDMENT GUARANTEE AGAINST UNREASONABLE SEARCHES AND SEIZURES (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)

137.    Aleynikov repeats and realleges the allegations contained in Paragraphs 1 through 136 of this Complaint as though fully set forth herein.

138.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Duplication statute, as detailed in this Complaint.

139.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated the State Prosecution of Plaintiff for violating the Unlawful Duplication statute without probable cause to believe he had done so.

140.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Duplication statute with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

141.    Plaintiff's State Prosecution for violating the Unlawful Duplication statute was terminated in his favor when the jury returned a verdict of Not Guilty on that charge on May 1, 2015.

142.    Agent McSwain's initiation of a malicious prosecution of Plaintiff under the Unlawful Duplication statute was accompanied by deprivations of liberty and property consistent with a seizure, as set forth in Paragraph 26 of this Complaint.

143.    Agent McSwain's malicious prosecution of Plaintiff under the Unlawful Duplication statute as alleged in this count violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

144.     As a direct and proximate result of the violation of his Fourth Amendment rights as alleged in this count, Aleynikov has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Sixth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

<u>**SEVENTH COUNT**</u>
**MALICIOUS PROSECUTION UNDER THE UNLAWFUL USE STATUTE
IN VIOLATION OF THE FOURTH AMENDMENT GUARANTEE
AGAINST UNREASONABLE SEARCHES AND SEIZURES
(AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)**

145.     Aleynikov repeats and realleges the allegations contained in Paragraphs 1 through 144 of this Complaint as though fully set forth herein.

146.     Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Use statute, as detailed in this Complaint.

147.     Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated the State Prosecution of Plaintiff for violating the Unlawful Use statute without probable cause to believe he had done so.

148.     Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Use statute with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

149.    Plaintiff's State Prosecution for violating the Unlawful Use statute was terminated in his favor when Justice Conviser entered the Trial Order of Dismissal of the Unlawful Use charges on July 6, 2015.

150.    Agent McSwain's initiation of a malicious prosecution of Plaintiff under the Unlawful Use statute was accompanied by deprivations of liberty and property consistent with a seizure, as set forth in Paragraph 26 of this Complaint.

151.    Agent McSwain's malicious prosecution of Plaintiff under the Unlawful Use statute as alleged in this count violated his right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution.

152.    As a direct and proximate result of the violation of his Fourth Amendment rights as alleged in this count, Aleynikov has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Seventh Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

## EIGHTH COUNT
**MALICIOUS PROSECUTION UNDER THE UNLAWFUL DUPLICATION STATUTE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENT GUARANTEES AGAINST DEPRIVATIONS OF LIBERTY WITHOUT PROCEDURAL DUE PROCESS OF LAW (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)**

153.    Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 152 of this Complaint as though fully set forth herein.

154.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Duplication statute.

155.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Duplication statute without probable cause to believe he had done so.

156.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Duplication statute with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

157.    Plaintiff's State Prosecution for violating the Unlawful Duplication statute was terminated in his favor when the jury returned a verdict of not guilty on that charge on May 1, 2015.

158.    The malicious prosecution of Plaintiff under the Unlawful Duplication statute as alleged in this count—which, as alleged above, was initiated without probable cause and with actual malice, was resolved in Plaintiff's favor, and was pursued based on false information provided to and through Agent McSwain—violated Plaintiff's right to procedural due process under the Fifth and Fourteenth Amendments.

159.    As a direct and proximate result of Agent McSwain's violation of Plaintiff's right to procedural due process of law as alleged in this count, Plaintiff has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Eighth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

## NINTH COUNT
## MALICIOUS PROSECUTION UNDER THE UNLAWFUL USE STATUTE IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENT GUARANTEES AGAINST DEPRIVATIONS OF LIBERTY WITHOUT PROCEDURAL DUE PROCESS OF LAW (AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)

160.    Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 159 of this Complaint as though fully set forth herein.

161.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Use statute.

162.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Use statute without probable cause to believe he had done so.

163.    Agent McSwain, acting in his personal capacity and by his own individual acts, and at all times under color of federal law, initiated and pursued the State Prosecution of Plaintiff for violating the Unlawful Use statute with actual malice, acting knowingly, recklessly and/or with gross negligence, and with the patently improper motive of furthering Goldman Sachs's interests rather than the interests of justice.

164.    Plaintiff's State Prosecution for violating the Unlawful Use statute was terminated in his favor when Justice Conviser entered the Trial Order of Dismissal of the Unlawful Use charges on July 6, 2015.

165.    The malicious prosecution of Plaintiff under the Unlawful Use statute as alleged in this count—which, as alleged above, was initiated without probable cause and with actual malice, was resolved in Plaintiff's favor, and was pursued based on false information provided to and through Agent McSwain—violated Plaintiff's right to procedural due process under the Fifth and Fourteenth Amendments.

40

166.    As a direct and proximate result of Agent McSwain's violation of Plaintiff's right to procedural due process of law as alleged in this count, Plaintiff has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Ninth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

**TENTH COUNT**
**BIVENS CONSPIRACY TO DEPRIVE ALEYNIKOV OF HIS RIGHTS UNDER THE**
**FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS**
**(AGAINST AGENT MCSWAIN AND JOHN DOES 1-10)**

167.    Aleynikov repeats and realleges the allegations contained in Paragraph 1 through 166 of this Complaint as though fully set forth herein.

168.    Beginning on or about July 1, 2009, Agent McSwain entered into a conspiracy with Goldman Sachs whereby they agreed to maliciously prosecute Aleynikov for conduct that both Agent McSwain and Goldman Sachs knew did not violate federal or New York state law.

169.    In furtherance of the conspiracy, and in order to inflict an unconstitutional injury upon Aleynikov, Goldman Sachs provided Agent McSwain with false information regarding Aleynikov's activities, the nature and value of the source code he copied, and whether and to what extent any of the source code was proprietary or could be used to cause competitive harm to Goldman Sachs.

170.    Agent McSwain, by agreement with and at the behest of Goldman Sachs, committed the following overt acts to institute and pursue the malicious Federal and State Prosecutions of Aleynikov in furtherance of the conspiracy:

a.  without undertaking an investigation regarding the veracity of Goldman Sachs's statements or a cursory review of applicable law, arrested Aleynikov without probable cause in violation of his rights under the Fourth Amendment;

b.  repeated the false information provided to him by Goldman Sachs to the prosecutors, the court and the grand jury as a means to further the conspiracy to pursue the Federal Prosecution, thereby continuing the Fourth Amendment seizure and depriving Aleynikov of his right to procedural due process secured by the Fifth Amendment;

c.  initiated and pursued the State Prosecution following the reversal of Aleynikov's conviction in the Federal Prosecution;

d.  convinced prosecutors and the court to consider Aleynikov a flight risk, falsely characterized him as a fugitive from justice, and frustrated the return of his travel documents following the reversal of his conviction in the Federal Prosecution;

e.  seized and illegally retained Aleynikov's property to facilitate a second malicious prosecution in state court;

f.  falsely swore out an arrest warrant stating that Aleynikov made a tangible reproduction or representation of computer source code owned by Goldman Sachs to facilitate his arrest and prosecution in the State Prosecution; and

g.  provided false information to the prosecutors, the court and the grand jury in the state case as a means to further the conspiracy to pursue the State Prosecution, thereby continuing the Fourth Amendment seizure and depriving Aleynikov of his right to procedural due process secured by the Fifth and Fourteenth Amendments.

171.    The conspiracy to effectuate two malicious prosecutions of Plaintiff as alleged in this count violated his Fourth Amendment right to be free from unreasonable searches and seizures and his Fifth and Fourteenth Amendment right to procedural due process.

172.    As a direct and proximate result of the violation of Plaintiff's Fourth, Fifth and Fourteenth Amendment rights as alleged in this count, he has suffered and will continue to suffer the severe and permanent damages.

**WHEREFORE**, Plaintiff, Sergey Aleynikov, demands judgment against Defendants, Agent Michael McSwain and John Does 1-10, on the Tenth Count of this Complaint for compensatory and punitive damages in an amount to be determined at trial plus interest, attorneys' fees, costs of suit and such other and further relief as the Court deems equitable and just.

Dated: July 31, 2015                    Respectfully submitted,
       Chatham, New Jersey

                                        **MARINO, TORTORELLA & BOYLE, P.C.**
                                        437 Southern Boulevard
                                        Chatham, New Jersey 07928-1488
                                        Phone:    (973) 824-9300
                                        Facsimile: (973) 824-8425

                                        By: _____
                                            Kevin H. Marino
                                            kmarino@khmarino.com

                                        *Attorneys for Plaintiff Sergey Aleynikov*

43

## DEMAND FOR TRIAL BY JURY

Plaintiff, Sergey Aleynikov, hereby demands a trial by jury as to all issues so triable in this case.

Dated:  July 31, 2015                  Respectfully submitted,
       Chatham, New Jersey

**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Phone:    (973) 824-9300
Facsimile: (973) 824-8425

By:                                  
    Kevin H. Marino
    kmarino@khmarino.com

*Attorneys for Plaintiff Sergey Aleynikov*

44